IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:18-cv-02612-RM-NRN

DR. ERFAN IBRAHIM,

    Plaintiff,

v.

ALLIANCE FOR SUSTAINABLE ENERGY, LLC,

    Defendant.

---

**ORDER**

---

This employment discrimination case is before the Court on Defendant's Motion for Summary Judgment (ECF No. 26), which has been fully briefed, including with supplemental briefing after discovery was temporarily reopened (ECF Nos. 33, 34, 58, 61). The Court grants the motion for the reasons below.

**I.    LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a

matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

## II.	BACKGROUND

Plaintiff began working for Defendant as a center director in March 2015.  In October 2017, he was demoted to research advisor and acting center director.  He was fired five months later.  Defendant contends that it fired Plaintiff because of two incidents where he acted inappropriately toward females with whom he interacted as part of his job.  Plaintiff contends that he was fired because he is male, Pakistani American, Muslim, and a person of color.

The first incident cited by Defendant involved Heather Newell, a single mother who worked for Defendant as an administrative assistant.  After Ms. Newell was assigned to assist Plaintiff, he offered to cover the cost of her rental car because he believed she was facing economic hardship.  A few weeks later, Plaintiff sent her a text message asking if she would like to see a movie and stating that he did not have a significant other and did not want to go alone.  (ECF No. 62 at ¶ 17.)  Plaintiff contends that he invited her "as friends."  (*Id.*)  Ms. Newell initially responded with a "maybe," but later stated in another text, "I don't believe us going to a movie or you paying for my rental car is appropriate and I fear I may have, somehow, given you the wrong idea."  (*Id.* at ¶ 19.)  Ms. Newell asked Plaintiff if they could "just keep [their]

2

friendship at work." (*Id.*)  Plaintiff contends that he agreed to Ms. Newell's request and that "the matter was concluded amicably." (*Id.*)  Nonetheless, Ms. Newell informed her supervisor about her communications with Plaintiff a few days later, and the supervisor reported the incident to Plaintiff's supervisor.  The following day, Plaintiff's supervisor met with him and told him to "be more careful because of certain sensitivities because Plaintiff was a Center Director and Ms. Newell was an admin that was working for him." (*Id.* at ¶ 25.)

The second incident occurred less than two weeks later.  It involved Pauline Wood, a member of a delegation of cybersecurity experts that visited Defendant's facility from the United Kingdom.  At an evening reception with the delegation, Plaintiff told Ms. Wood that based on her "body language . . . [he] got a friendly vibe from her." (*Id.* at ¶ 28.)  Later in the conversation, Plaintiff asked, "You know, obviously you're a young, attractive female, how do you deal with situations when men don't take you seriously in the [manufacturing] industry?" (*Id.* at ¶ 29.)  Plaintiff contends that when the conversation ended, Ms. Wood told him it was "nice meeting you," and that she did not appear to be upset by his comments. (*Id.* at ¶ 30.)  However, a few weeks later Plaintiff's supervisor received an e-mail from the Head of Science & Innovation stating, in pertinent part, as follows:

> Unfortunately, an incident occurred with one of your staff at a later event offsite that is inconsistent with our values and I wanted you to be aware.  On February 5th, we (the UK Government) held an evening reception in Denver for the visiting UK delegation to network with the local Colorado cybersecurity community.  At this event, one of your members of staff, Mr. Erfan Ibrahim, made inappropriate and offensive remarks to one our members of staff, commenting on her physical appearance and questioning her ability to be taken seriously as a professional.  Our highest priority is for our staff to feel safe and valued, and this evening fell short of that standard.  Therefore we would like to draw your attention to your colleague's behaviour, so that you can take appropriate action.

3

(*Id.* at ¶ 32.) When Plaintiff's supervisor asked Plaintiff about the incident, Plaintiff admitted that he made the above statements but denied they were made in the manner alleged. (*Id.* at ¶ 36.) Plaintiff was immediately placed on paid administrative leave and, days later, fired.

The notice of termination Plaintiff received states that he "exhibited poor management acumen and unprofessional behavior," which prompted two formal complaints against him about a month apart. The notice also further states that Plaintiff had been giving a verbal warning and coaching after the first incident and that "[a]fter researching both situations, it has been determined that the events were the result of poor judgment, inappropriate behavior, and lack of awareness of the impact of your actions." (ECF No. 27-8 at 2.)

Plaintiff then filed this lawsuit, asserting violations of Title VII of the Civil Rights Act of 1964 for discrimination based on national origin, religion, race or color, and gender.

## III. ANALYSIS

Title VII prohibits an employer from discriminating against any individual because of his race, color, religion, sex, or national origin. When a plaintiff offers no direct evidence of discrimination, courts assess circumstantial evidence of discrimination using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). First, to establish a prima face case of discrimination, a plaintiff must show that (1) he belongs to a protected class, (2) he suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007). For present purposes, Defendant does not dispute that the first two elements are satisfied. A plaintiff can establish the third element by showing that the employer treated similarly situated employees more favorably. *Id.* at 800-01. Second, once the plaintiff establishes a prima facie

4

case of discrimination, the burden shifts to the defendant to articulate legitimate, nondiscriminatory reasons for its action. *Id.* at 800. Third, if the defendant proffers such reasons, the burden shifts back to the plaintiff to show they are pretextual. *Id.*

Defendant argues that Plaintiff has not presented a prima facie case of discrimination because he has not shown that he was fired under circumstances giving rise to an inference of discrimination. Defendant also argues that Plaintiff has not shown that its proffered reasons for firing him are pretextual. The Court finds that Plaintiff fails to raise a genuine issue of material fact with respect to either argument.

### A. Circumstances Giving Rise to an Inference of Discrimination

Plaintiff does not dispute that the interactions with Ms. Newell and Ms. Wood occurred. Rather, he contends that the circumstances of his firing give rise to an inference of discrimination because he was replaced by someone outside his protected class and because Defendant treated similarly situated employees outside his protected class more favorably. (ECF No. 33 at 16.) However, Plaintiff has not adduced any evidence that his position continued to exist after he was terminated. Defendant does not dispute that Caucasian males handled Plaintiff's former responsibilities as a research advisor after he was fired. (ECF No. 62 at ¶ P40.) But this fact alone is insufficient to raise a genuine issue as to whether he was "replaced" by Caucasian males.

Nor has Plaintiff shown that Defendant treated similarly situated employees more favorably. "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *PVNF*, 487 F.3d at 801. Plaintiff's allegations regarding three employees who were his direct reports are not relevant here because these employees did not have the same supervisor as Plaintiff. Further, Plaintiff has not shown

that these employees were subject to the same standards governing performance evaluation and discipline as he was or that they engaged in workplace conduct of comparable seriousness to his. Plaintiff's contentions that he raised performance issues with respect to these employees and that he felt Defendant did not take his views seriously have no bearing on any issues related to Plaintiff's firing, which was due to his problematic interactions with females, not performance issues.

Plaintiff's allegations regarding C.B., a manager accused of sexual harassment, are also unavailing because Plaintiff has presented no evidence that he and C.B. were similarly situated. First, Plaintiff was an acting center director, while C.B. was merely a manager. Plaintiff has not shown that Defendant held employees in both positions to the same standards of conduct. Second, unlike C.B., Plaintiff refused to accept responsibility for his conduct, and he persists in arguing that he did nothing wrong. Third, one of Defendant's stated reasons for firing Plaintiff was that he continued to engage in problematic behavior soon after being warned about similarly problematic behavior. Conversely, there is no evidence that C.B. continued to engage in improper conduct after he was disciplined. Because Plaintiff has not shown that he was similarly situated to C.B., it is irrelevant that C.B. was placed on administrative leave rather than fired and that he was later promoted to center director.

In support of his claim for reverse gender discrimination, Plaintiff also contends that but for his status as a male, he would not have been fired. This argument is premised in part on Ms. Newell's testimony that she would not have been uncomfortable going to the movies with a female colleague. (ECF No. 62 at ¶ P23.) But Ms. Newell's statement does not amount to a showing that Defendant fired him because he is male. This argument ignores relevant facts about the circumstances of Plaintiff's invitation to Ms. Newell, for example, his statement that he

did told her he did not have a significant other and Ms. Newell's statement that she feared she had somehow given Plaintiff a wrong impression. Plaintiff also appears to rely on the undisputed fact that Ms. Newell's supervisor had taken Ms. Newell out to lunch during work hours to argue that it was not improper for him to invite Ms. Newell to a movie outside of work hours. The Court finds this evidence does not raise a genuine issue as to whether he was fired because he is male.

Plaintiff's contention that his demotion in 2017 is evidence of discrimination is also unavailing. He has presented no evidence that the demotion occurred under circumstances giving rise to an inference of discrimination, and conclusory allegations are insufficient to withstand summary judgment.

Accordingly, Plaintiff has not presented evidence of circumstances giving rise to an inference of discrimination, and the Court concludes that Plaintiff has failed to establish a prima facie case on any of his claims.

**B.     Pretext**

The Court further concludes that Defendant is entitled to summary judgment because Plaintiff has not shown that Defendant's proffered reasons for firing him are pretextual. Plaintiff's arguments regarding pretext focus primarily on the process Defendant undertook in deciding to fire him. He also faults Defendant for failing to cite a specific policy explicitly prohibiting the conduct for which he was fired. But these arguments fail to raise a genuine issue about Defendant's proffered reasons for firing him. As explained in the notice of termination, Plaintiff's conduct "resulted in loss of confidence in [his] ability to professionally represent NREL." (ECF No. 27-8 at 2.) Citing the two incidents involving similar conduct and the fact that Plaintiff had been warned after the first incident, Defendant determined that he lacked

awareness of the impact of his actions. Under the circumstances presented, Plaintiff's continued assertions that the incidents were "unremarkable" and that his conduct did not violate any policy or standard of conduct of Defendant support rather than undermine Defendant's determination. (ECF No. 33 at 1.)

Plaintiff also argues that Defendant has not provided the "complete" file on his firing, that Defendant has not identified every individual who participated in the decision, and that Defendant's leadership "is heavily comprised of Caucasian males, with only a few token females and minorities, most of whom (including [Plaintiff]) have been replaced." (*Id.* at 2.) In essence, Plaintiff is arguing that the decisionmaking process was not as transparent as he wanted it to be and that because Caucasian males, in large part, were responsible for his firing, the decision must have been for discriminatory reasons. But Defendant has provided substantiated and legitimate reasons for its decision, and Plaintiff's challenges with respect to the procedural aspects of how it was made do not raise a genuine issue as to whether those reasons are pretextual.

## IV. CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 26). The Clerk is directed to CLOSE this case.

DATED this 2nd day of March, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge