FILED
United States Court of Appeals
Tenth Circuit

April 20, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DR. ERFAN IBRAHIM,

    Plaintiff - Appellant,

v.

ALLIANCE FOR SUSTAINABLE ENERGY, LLC,

    Defendant - Appellee.

No. 20-1131

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:18-CV-02612-RM-NRN)**

_____

David J. Meretta, Miller & Law, Littleton, Colorado, on behalf of Plaintiff-Appellant.

Christopher L. Ottele, Husch Blackwell (Ashley W. Jordaan & Dana Dobbins, with him on the briefs), Denver, Colorado, on behalf of Defendant-Appellee.

_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

    Dr. Erfan Ibrahim is a Muslim man of Pakistani descent who served as an executive at Alliance for Sustainable Energy until he was fired.

Alliance attributed the firing to Dr. Ibrahim's inappropriate comments to two women; Dr. Ibrahim disagrees, attributing the firing to discrimination based on his race, religion, and gender.

Alliance urged summary judgment, arguing that Dr. Ibrahim had lacked evidence of discrimination. In response, Dr. Ibrahim pointed to Alliance's decision not to fire another executive (C.B.) accused of sexual harassment. The district court rejected the comparison, pointing to differences between the conduct of Dr. Ibrahim and C.B. In our view, however, these differences involved matters for the factfinder. So we reverse the award of summary judgment on the claim of race discrimination.

But Dr. Ibrahim and C.B. were both male, and Dr. Ibrahim never identified C.B.'s religion. So we affirm the award of summary judgment on the claims of discrimination based on religion and gender.[1]

## I.   Dr. Ibrahim is fired by Alliance.

While working for Alliance, Dr. Ibrahim texted Ms. Heather Newell, who was an administrative assistant. In the text, Dr. Ibrahim offered to

---

[1] Dr. Ibrahim also raised a claim of discrimination based on national origin. But in his opening brief, Dr. Ibrahim didn't make an argument about discrimination involving national origin. Because Dr. Ibrahim did not present an appellate argument about national origin, he has waived this claim and we need not address it. *See Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1199–1200 (10th Cir. 2011) (deeming a claim waived based on insufficient development in the appellant's opening brief).

help Ms. Newell pay for a rental car. A few weeks later, Dr. Ibrahim invited Ms. Newell to a movie, stating that he didn't have a significant other. Ms. Newell declined, stating that she thought that it would be inappropriate for them to see a movie together or for him to pay for her rental car.

After Ms. Newell declined, she expressed concern to her supervisor, who discussed the incident with Dr. Ibrahim's supervisor (Mr. Juan Torres). Mr. Torres told Dr. Ibrahim to be careful because of the sensitivities from his authority over Ms. Newell. According to Dr. Ibrahim, the conversation was casual and Mr. Torres simply recommended that Dr. Ibrahim move on from the incident.

Within two weeks, Dr. Ibrahim attended a reception with members of a visiting delegation from the United Kingdom. At the reception, Dr. Ibrahim told a female delegate, Ms. Pauline Wood, that he had gotten a positive vibe from her. Later in the conversation, Dr. Ibrahim asked Ms. Wood how she had dealt with men in the manufacturing sector who did not take her seriously "as an attractive, young female." Weeks later, an official at the U.K. consulate expressed concern to Mr. Torres about Dr. Ibrahim's comments.

After learning of the incident, Mr. Torres asked Dr. Ibrahim about his conversation with Ms. Wood. Dr. Ibrahim confirmed that he had made the comments and said that he saw nothing wrong with them. Alliance

3

immediately put Dr. Ibrahim on paid administrative leave and then fired him, stating that his comments to Ms. Newell and Ms. Wood showed a lack of professionalism and judgment. Dr. Ibrahim sued under Title VII of the Civil Rights Act of 1964.

## II. We conduct de novo review on the availability of summary judgment.

We conduct de novo review and uphold summary judgment only in the absence of a genuine dispute of material fact. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). When deciding whether a genuine factual dispute exists, we view the evidence in the light most favorable to the party opposing summary judgment (Dr. Ibrahim). *Id.*

## III. A genuine factual dispute exists on whether Alliance discriminated against Dr. Ibrahim based on his race.

Because Dr. Ibrahim relies on circumstantial evidence, we apply the framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kendrick*, 220 F.3d at 1225. Under this framework, the inquiry involves three steps:

1. Dr. Ibrahim must present a prima facie case of discrimination.

2. If he makes this showing, the burden shifts to Alliance to provide a legitimate, nondiscriminatory reason for the firing.

3. If Alliance provides a legitimate, nondiscriminatory reason, the burden reverts to Dr. Ibrahim to show pretext.

*Id.* at 1226. In our view, Dr. Ibrahim satisfied his burdens on the first and third steps for the claim involving race discrimination.

### A. Dr. Ibrahim has presented a prima facie case of discrimination based on race.

Dr. Ibrahim can present a prima facie case through evidence that

1. he belongs to a protected class,

2. he suffered an adverse employment action, and

3. the circumstances give rise to an inference of discrimination.

*E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

Alliance does not dispute Dr. Ibrahim's membership in a protected class or the existence of an adverse employment action. So we must determine whether the circumstances give rise to an inference of discrimination.

An inference of discrimination can arise from an employer's favoritism toward a similarly situated employee who is not part of the protected class. *Id.* at 800–01. Employees are similarly situated when they share a supervisor or decision-maker, must follow the same standards, and engage in comparable conduct. *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) (same decision-maker); *PVNF*, 487 F.3d at 801 (listing the requirements).

Dr. Ibrahim argues that a factfinder could reasonably infer discrimination based on Alliance's treatment of a white male manager, C.B. In the Fall of 2015, C.B. faced complaints by a female subordinate about a pattern of sexual harassment and gender discrimination. Alliance

investigated and found that C.B. had yelled and cursed at a female subordinate, exchanged sexual text messages with subordinates, asked a subordinate to run a personal errand during work hours, and showed favoritism in hiring. C.B. was put on administrative leave and required to take management and leadership classes. But Alliance allowed C.B. to return to work.

Dr. Ibrahim presented evidence that the same three individuals had participated in the decisions to fire him and to issue only a warning to C.B. So a factfinder could reasonably determine that the same decision-makers had been involved.

Dr. Ibrahim also presented evidence that Alliance had accused him and C.B. of violating the same policies. So a factfinder could reasonably determine that the same standards had applied to Dr. Ibrahim and C.B.

Alliance concluded that both C.B. and Dr. Ibrahim had communicated inappropriately with women, and a factfinder could reasonably regard C.B.'s conduct as comparable to Dr. Ibrahim's. *See Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995) (stating that violations can be comparably serious even if they involve different conduct or rules).

* * *

A reasonable factfinder could determine that (1) C.B. had been similarly situated to Dr. Ibrahim and (2) Alliance had treated C.B. more

favorably. So Dr. Ibrahim has presented a prima facie case of discrimination based on race.[2]

### B. Dr. Ibrahim has raised a genuine factual dispute on the pretextual nature of Alliance's explanation for the firing.

Alliance presented a legitimate, nondiscriminatory reason for firing Dr. Ibrahim: inappropriate comments to two women. But Dr. Ibrahim rebutted this explanation with evidence of

- greater leniency toward C.B. in similar circumstances and
- inadequacy in the investigation.

*See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (stating that a plaintiff can show pretext through evidence of better treatment toward a similarly situated, nonprotected employee who violated rules of comparable seriousness); *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 542 (10th Cir. 2014) ("A 'failure to conduct what appears to be a fair investigation' of the violation that purportedly prompted adverse action may support an inference of pretext." (quoting *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008))).

---

[2] In its response brief, Alliance argues that a prima facie case also required Dr. Ibrahim to show that his position had not been eliminated. But Alliance conceded in oral argument that this requirement does not apply when the employer had fired an employee for unsatisfactory conduct rather than elimination of the position. *See Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).

### 1. The factfinder could reasonably regard Dr. Ibrahim and C.B. as similarly situated.

Determining the similarity of the situations is generally a fact question. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007). But Alliance argues that no reasonable factfinder could view C.B. and Dr. Ibrahim as similarly situated because

- they had different jobs,

- Dr. Ibrahim committed a second violation after a warning and C.B. didn't, and

- Dr. Ibrahim stubbornly denied misbehavior and C.B. didn't.

In assessing these arguments, we must view the evidence favorably to Dr. Ibrahim. *See* Part II, above. Viewing the evidence this way, a factfinder could reasonably determine that Dr. Ibrahim and C.B. had been similarly situated.

The jobs were different, but a factfinder could reasonably view the difference as immaterial. When C.B. was disciplined, he was a group manager. Group managers report to center directors, and Dr. Ibrahim was an acting center director.[3] Though the job titles differed, a factfinder could also consider the two employees' responsibilities and qualifications. *See Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (considering job responsibilities and qualifications and

---

[3]   He also served as a research advisor for Alliance.

discounting the job titles in determining whether employees had been similarly situated). The responsibilities for group managers and acting center directors included supervision of others.

Alliance insists that C.B. was a "lower-level manager," but does not cite any supporting evidence. Appellee's Resp. Br. at 28. Despite the difference in status, both C.B. and Dr. Ibrahim acted as supervisors and bore responsibility as executive managers.

Given their shared status as executive managers, the factfinder could reasonably consider any difference in the jobs as immaterial. Alliance determined that both individuals had violated the same policies, so the difference in job titles could mean little. *See Coleman v. Donahoe*, 667 F.3d 835, 848–49 (7th Cir. 2012). And Alliance has not presented evidence of a general practice of greater leniency to group managers than to acting center directors. A factfinder could thus reasonably conclude that Dr. Ibrahim and C.B. had been similarly situated despite the different job titles.

Alliance also argues that C.B.

- stopped behaving inappropriately after being warned and Dr. Ibrahim didn't and

- deserved greater leniency because C.B. took responsibility for his behavior and Dr. Ibrahim didn't.

A factfinder could reasonably reject these arguments.

For example, a factfinder could reasonably regard Dr. Ibrahim's reaction as similar to C.B.'s. After investigating the complaint against C.B., Alliance presented him with a draft of the findings and allowed him to comment. C.B. took advantage of the opportunity and expressed "complete disagreement with [the] findings and consequences." Appellant's App'x vol. 3, at 527. Alliance then revised the report, and C.B. admitted that he had lost his temper with a subordinate. But Alliance took a different course with Dr. Ibrahim, declining to give him a draft report or even a written warning.

Alliance asserts that when C.B. was given his final version of the warning, he accepted responsibility for his prior misconduct. But Alliance provides no citations for this assertion. *See, e.g.*, Appellee's Resp. Br. At 29 (omitting any citation for the assertion that C.B. "admitted his mistakes").

Dr. Ibrahim presents evidence that his conversation with Mr. Torres was friendly and casual, that he received no written or verbal warning, that Mr. Torres never suggested a policy violation, and that Mr. Torres simply asked Dr. Ibrahim not to discuss the issue with Ms. Newell or make similar offers to other staff members. For example, Dr. Ibrahim states under oath:

> Mr. Torres conceded to me during the meeting that there was no Alliance policy that had been violated. I received no written warning of any kind from Alliance Management or its HR Department in connection with my communications with Ms. Newell. Contrary to Alliance's recent assertion, Mr. Torres did

10

> not describe our meeting as a "verbal warning." He spoke in a friendly tone and asked that I not extend such offers to employees who worked under him, as I was a high-level executive at the lab. He requested that I simply move on and not approach Ms. Newell to discuss the matter further.

Appellant's App'x vol. 2, at 195.

Mr. Torres provides a similar description of the meeting, stating that he recommended to Dr. Ibrahim that he avoid a social relationship with Ms. Newell. *Id.* at 243–44. And Ms. Newell's supervisor acknowledged that Mr. Torres had "played down" the incident and remarked that notation of "this [incident] was a bit extreme." *Id.* at 290. In contrast, C.B. received a document expressly warning of additional discipline, including termination, if he again behaved inappropriately.[4]

Alliance describes Mr. Torres's statement to Dr. Ibrahim as a warning. But Mr. Torres characterized his statement as a recommendation and admitted that he hadn't mentioned the possibility of termination. *Id.*

---

4   Alliance said to C.B.:

   <u>CONSEQUENCES</u>
   This is a formal warning that if there is not immediate and sustained improvement in your behavior as discussed above, or if there are any other incidents of inappropriate behavior, you may be subject to further disciplinary action, up to and including termination. If there are no further incidences, this written warning will be removed from your personnel file one year from issuance.

Appellant's App'x vol. 3, at 529.

at 243–44. Given this characterization, the factfinder could reasonably determine that Mr. Torres's statement had not constituted a warning.

Even if we were to characterize Mr. Torres's statement as a warning, a factfinder could also reasonably determine that Dr. Ibrahim had not repeated the conduct. Mr. Torres testified that he had told Dr. Ibrahim to be careful about his "social interactions, especially with direct reports," because he needed to set "an example for how to interact with other staff" to avoid a perception of favoritism. *Id.* at 243. But Ms. Wood did not work for Alliance or report to Dr. Ibrahim.

Though Ms. Wood was not on Alliance's staff, a factfinder could view Dr. Ibrahim's remarks to Ms. Wood as similar to the remarks made to Ms. Newell. But when the evidence is viewed favorably to Dr. Ibrahim, a factfinder could also focus on the differences. Dr. Ibrahim commented on Ms. Wood's appearance, but not on Ms. Newell's. And Ms. Wood didn't work for Dr. Ibrahim, so there was no risk of misperception by a subordinate or concern about favoritism among employees.

Alliance argues not only that C.B.'s circumstances had differed but also that he had acknowledged his misbehavior and Dr. Ibrahim had continued to deny misconduct even after his firing. This argument is irrelevant because we consider only the facts available to Alliance when it decided to fire Dr. Ibrahim. *Watts v. City of Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001). At that time, Alliance knew only that Dr. Ibrahim had

defended the appropriateness of his behavior, which is also what C.B. had done. So C.B.'s eventual acceptance of responsibility does not prevent a finding that he and Dr. Ibrahim had been similarly situated.

### 2. Alliance's limited investigation also suggests pretext.

A factfinder can reasonably infer pretext not only from greater leniency to similarly situated employees but also from shortcomings in the employer's investigation. *See* p. 7, above. For example, a factfinder can reasonably infer pretext from an employer's failure to inquire into the reasons for an employee's behavior. *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1159–60 (10th Cir. 2008).

Alliance's investigation consisted solely of asking Dr. Ibrahim what he had said to the member of the U.K. delegation. Dr. Ibrahim admitted what he had said, and Alliance fired him. But Alliance never asked Dr. Ibrahim why he had considered his comment to Ms. Wood as appropriate or different from his texts to Ms. Newell. If Alliance had asked, it might have learned that Dr. Ibrahim

- hadn't regarded his statement to Ms. Wood as inappropriate or flirtatious and

- hadn't perceived Mr. Torres's comments as a warning or a recommendation about how to communicate with females working for other companies.

Without Dr. Ibrahim's explanation, Alliance inferred a lack of professionalism and judgment. If Dr. Ibrahim had an opportunity to

13

explain, Alliance might have attributed the incident with Ms. Wood to Mr. Torres's casual approach rather than Dr. Ibrahim's lack of professionalism or judgment.

Despite giving Dr. Ibrahim no opportunity to explain, Alliance allowed C.B. to submit a written response to a draft of his eventual warning. A factfinder could reasonably infer discrimination from Alliance's failure to ask Dr. Ibrahim why he had considered his behavior appropriate; C.B. had the opportunity not only to explain his behavior but also to rebut the entirety of Alliance's draft of its warning. Given the difference in Alliance's investigations as to C.B. and Dr. Ibrahim, the factfinder could reasonably infer pretext.

\* \* \*

Dr. Ibrahim has created a genuine dispute of material fact on greater leniency toward C.B. and inadequacy in Alliance's investigation. So we reverse the award of summary judgment to Alliance on the claim involving race discrimination.[5]

---

[5]   Dr. Ibrahim also urges pretext through evidence of a previous demotion, his feelings that he was not taken as seriously as white colleagues, the lack of documentation about his firing, the use of subjective criteria, and a deviation from Alliance's policies. We need not address these arguments.

## IV. Dr. Ibrahim has not presented a prima facie case of religious discrimination.

Dr. Ibrahim also claims discrimination based on his Muslim religion. For this claim, Dr. Ibrahim again relies on circumstantial evidence, so he must present a prima facie case of discrimination. *See* p. 4, above. For a prima facie case, he must present evidence of his membership in a protected class, an adverse employment action, and the existence of circumstances giving rise to an inference of discrimination. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007); *see* p. 5, above.

Alliance does not dispute the first two elements, so we consider only whether the circumstances of Dr. Ibrahim's firing could create a reasonable inference of discrimination based on religion. Dr. Ibrahim doesn't identify the religion of any comparators or show past complaints of religious discrimination. Dr. Ibrahim instead relies on evidence that

- Alliance knew of his Muslim faith and
- he sensed religious stereotypes among other Alliance executives.

But he presents no evidence of any statements or actions suggesting a negative perception of Muslim employees. Given the lack of such evidence, the district court properly awarded summary judgment to Alliance on the claim of religious discrimination.

**V.   Dr. Ibrahim has not presented a prima facie case of gender discrimination.**

Dr. Ibrahim claims discrimination based not only on religion but also on gender. Because Dr. Ibrahim is male, a prima facie case requires stronger proof than when the discrimination targets a female. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

For a prima facie showing, Dr. Ibrahim must show either

- circumstances supporting an inference that Alliance is "one of those unusual employers who discriminates against" males or

- facts supporting an inference that a female would not have been terminated.

*Id.* (quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992)). Dr. Ibrahim has not made either showing.

In fact, some of Dr. Ibrahim's evidence suggests that Alliance did not discriminate against men. For example, he presents evidence that

- Alliance's leadership is largely male and

- his own job duties were divided between other men after his firing.

Despite the evidence of division of his duties among other males, Dr. Ibrahim points to three alleged comments by decisionmakers Mary Ann Potter and Juan Torres:

1. women seemed to misinterpret Dr. Ibrahim's comments,

2. "guys always say that they want to be friends when they want more," Appellant's App'x vol. 2, at 183, and

16

    3.    Dr. Ibrahim's reference to friendship with Ms. Newell could have meant "friends with benefits," *Id.* at 406.

Dr. Ibrahim speculates that these comments show that a female would not have been fired. But Dr. Ibrahim does not identify a female employee who engaged in similar conduct and obtained better treatment.

Ms. Potter and Mr. Torres speculated about why Dr. Ibrahim's statements might have created discomfort for Ms. Newell and Ms. Wood. But Dr. Ibrahim presents no evidence that Alliance would have declined to fire a female who had made comparable remarks to males. *See Throupe v. Univ. of Denver*, 988 F.3d 1243, 1254–55 (10th Cir. 2021) (concluding that an employer was entitled to summary judgment on a Title VII claim because no evidence suggested that the employer would have provided different treatment to a female professor maintaining a close personal relationship with a male student). With no evidence of better treatment toward female employees, Dr. Ibrahim hasn't presented a prima facie case of gender discrimination.

## VI.  Conclusion

Because Dr. Ibrahim has not presented evidence of discrimination based on gender or religion, we uphold the award of summary judgment on these claims. But Dr. Ibrahim has created a genuine dispute of material fact on his claim of discrimination based on race. So we reverse the award of summary judgment on that claim.

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

April 20, 2021

Jane K. Castro
Chief Deputy Clerk

David J Meretta
Miller & Law
1900 West Littleton Boulevard
Littleton, CO 80120

**RE:** 20-1131, Ibrahim v. Alliance for Sustainable Nrg.
Dist/Ag docket: 1:18-CV-02612-RM-NRN

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

cc:   Dana Dobbins
      Ashley Warren Jordaan
      Christopher Larry Ottele

CMW/jjh